UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EQUILEASE FINANCIAL SERVICES, INC. AND EQ TRANSPORTATION, INC. | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 05-2099 |
| v. | ) ) | |
| FINCASTLE LEASING, INC., FREIDA WAGNER and GEORGE S. GUILD, | ) ) ) ) | |
| Defendants. | ) | |

ORDER

On January 18, 2005, plaintiffs Equilease Financial Services Inc. and EQ Transportation Inc. (collectively, "Equilease") filed a complaint with the United States District Court for the Northern District of Illinois.[1]  The complaint alleged a breach of an equipment lease and two breaches of guaranty; additionally, the complaint sought replevin of two commercial buses.  On February 14, 2005, defendants Fincastle Leasing Inc., George S. Guild ("Guild"), and Frieda Wagner ("Wagner")[2] (collectively, "Fincastle") filed a motion to dismiss for improper venue as well as a motion to dismiss or stay the proceedings.  The United States District Court for the Northern District of Illinois was deemed to be an improper venue; accordingly, the case was transferred to this court.

On April 26, 2005, Equilease filed a motion for an order of replevin for the return of the two buses.  Fincastle filed an answer and counterclaim on May 11, 2005.  Fincastle's counterclaim alleges breach of contract, fraud in the inducement, breach of express warranty, and breach of implied warranty of merchantability for which Fincastle seeks monetary damages plus attorney fees.  On May 24, 2005, Equilease filed a motion to set a hearing on its motion for order of replevin.  Subsequently, on May 31, 2005, Equilease filed a motion to dismiss

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . ."  28 U.S.C. § 1332(a)(1).  Equilease Financial Services, Inc. and EQ Transportation, Inc. are both Delaware corporations; their principal place of business is in Connecticut.  Defendant Fincastle is an Illinois corporation with its chief executive offices located in Illinois.  Defendants Wagner and Guild are both citizens and residents of Illinois.  Equilease seeks the return of two commercial buses valued at $402,300 and additional collateral.  Counterclaimants Fincastle, Wagner, and Guild seek $173,000 plus attorney fees from Equilease.

[2] Guild and Wagner are guarantors of the lease.

1

Fincastle's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).  On June 6, 2005, Fincastle filed an amended motion to dismiss for improper venue or, in the alternative, to stay the proceedings pending the outcome of litigation in Florida state court, and on August 24, 2005, Equilease filed a supplemental response to the motion to dismiss or stay the proceedings to apprise the court of a recent ruling by the Florida court.

## BACKGROUND

Fincastle operates an interstate commercial bus business using vehicles that must meet minimum United States Department of Transportation ("D.O.T.") safety standards.  Equilease advertised some buses for lease, and Fincastle contacted Equilease to inquire about the commercial buses.  Equilease told Fincastle that the buses were D.O.T. safe and "ready to roll."  Fincastle relied upon Equilease's assurances that the buses fulfilled these requirements and on February 3, 2004, Equilease[3] and Fincastle entered into an agreement (the "Lease") to lease the two buses.

The buses were in the possession of Travel Lynx, Inc., in Cocoa, Florida. Fincastle principals Guild and Wagner traveled to Florida during the week of February 10, 2004 to take possession of the buses and drive them back to Fincastle headquarters in Kankakee, Illinois. However, when Guild and Wagner saw the buses, they found that both buses had serious defects, including, but not limited to, faulty brakes, a defective engine heater, and replacement of numerous parts with inferior parts.[4]  Fincastle informed Equilease of the defects.  Equilease asked Fincastle to take possession of the buses and assured Fincastle it would restore the buses to D.O.T. safety standards.  Fincastle then executed a Certificate of Acceptance for the leased buses, upon which Guild wrote, "Exceptions to follow regarding good repair and good working order."  Fincastle spent $10,000 in repairs to enable the buses to be driven to Illinois and another $163,000 in an unsuccessful attempt to restore the buses to D.O.T. safety standards.   To this day, the buses are not D.O.T. safe.  Fincastle is now insuring the buses and holding them in locked storage pending the outcome of this litigation.

Equilease and Fincastle brought an action against Travel Lynx, Inc. in Florida state court. Fincastle claims that Equilease subsequently withdrew from the state action without informing Fincastle, and Fincastle continues to pursue that action as sole plaintiff against Travel Lynx, Inc. Fincastle was granted leave of that court to file a crossclaim against Equilease.  That crossclaim is now stayed pending the resolution of Fincastle's counterclaim in this case.

Now before the court are Fincastle's motion to dismiss this proceeding due to existing litigation, or, alternatively, to stay the proceedings pending the outcome of the Florida litigation [#55]; and Equilease's motion to dismiss the counterclaims [#49].  Also pending are Equilease's motion for an order of replevin [#26] as well as a motion for a hearing on that motion [#47].

---

[3] The lessor is actually Conseco Finance Leasing Trust.  EQ Transportation is the successor-in-interest to Conseco Finance Leasing Trust.  Equilease Financial Services owns all of the shares of EQ Transportation, Inc. and acts as the servicer on the Lease.

[4] Inspection reports of the buses from November 23, 2003 and December 2, 2003, indicate that Equilease was, or should have been, aware of these defects.

2

ANALYSIS
I.

Fincastle moves the court to dismiss or stay the proceedings while the litigation proceeds in Florida state court. Equilease filed a response in opposition to the motion.

On August 24, 2005, Equilease supplemented its response with a copy of an order issued by the Florida court, which has stayed Fincastle's crossclaim against Equilease until this court resolves Fincastle's counterclaim. Accordingly, the motion to dismiss or stay proceedings pending the outcome of the Florida litigation [#55] is denied as moot.

II.

Equilease has filed a motion for an order of replevin [#26] and a motion to set the matter for hearing [#47]. For the following reasons, the court grants the motion to set the matter for hearing.

Equilease filed its motion for an order of replevin on April 26, 2005, pursuant to Federal Rule of Civil Procedure 64. Rule 64 provides that the motion is governed by Illinois law. Fed. R. Civ. P. 64 ("[A]ll remedies providing for seizure of . . . property . . . are available under the circumstances and in the manner provided by the law of the state in which the district court is held[.]"). In order for a plaintiff to prevail on a replevin action, (1) the plaintiff must be lawfully entitled to the possession of the property described; (2) the defendant must be wrongfully detaining the property; (3) the property cannot have been taken from the plaintiff for any lawful process; and (4) the plaintiff must have demanded the return of such property and the defendant must have refused. 735 Ill. Comp. Stat. 5/19-104; *see also First Illini Bank v. Wittek Indus., Inc.*, 634 N.E.2d 762, 763 (Ill. App. Ct. 1994).

Equilease has alleged the requisite elements of a replevin action. According to the terms of the Lease, Equilease is entitled to take possession of the leased buses in the event of default. Fincastle has possession of the buses pursuant to a lease agreement, and Equilease alleges the defendants have defaulted under that agreement. Additionally, Equilease has demanded the return of the buses, thereby pleading the statutory requirements of a replevin action.

The defendants' sole argument in opposition to setting a motion hearing is that the court should first rule on the motion to dismiss or stay the proceedings pending the outcome of the Florida litigation. The court has denied that motion; therefore, the court grants Equilease's motion to set the replevin hearing [#47] to evaluate the merits of the underlying claim. Not surprisingly, Fincastle argues that it is not in breach of the lease; therefore, Equilease is not entitled to possession of the buses and Fincastle is not wrongfully detaining the property. Fincastle is free to argue these issues at the replevin hearing. The motion for an order of replevin remains pending.

III.

Also before the court is Equilease's motion to dismiss Fincastle's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). The counterclaim consists of four counts: breach of

contract, fraud in the inducement, breach of express warranty, and breach of implied warranty of merchantability.

The court's threshold inquiry relates to the body of law governing these claims. The Lease specifies that New York law applies in any litigation that may arise from the Lease. "Illinois law respects the contract's choice-of-law clause as long as the contract is valid." *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996); *see also Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002). Accordingly, New York case law will be used to evaluate the counterclaims. Law of the forum, however, controls procedural matters. *Belleville Toyota*, 770 N.E.2d at 194.

A claim is subject to dismissal under Rule 12(b)(6) only "if the nonmoving party can prove no set of facts consistent with its complaint or counterclaim that would entitle it to relief." *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Additionally, the court must accept as true "all well pleaded facts alleged in the counterclaim … and draw all reasonable inferences in favor of the nonmoving party." *Northern Trust Co.*, 69 F.3d at 129.[5]

A.

To establish a cause of action for breach of contract under New York law, the party must allege: (1) a contract; (2) due performance by plaintiff; (3) breach by the defendant; and (4) damage caused to the plaintiff. *Furia v. Furia*, 498 N.Y.S.2d 12, 13 (N.Y. App. Div. 1986). Fincastle argues that Equilease breached the lease by failing to provide buses that were D.O.T. safe and fully operational as Equilease had orally promised. Equilease claims that the Lease contains all the terms and conditions, and no such terms appear within the Lease. Therefore, Equilease contends, it never breached the contract. To answer the broader question of whether the contract was breached, it is first necessary to determine whether the parol evidence rule is applicable.[6]

In diversity cases, federal courts must apply the parol evidence rule of the appropriate state. *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988) (stating parol evidence rule is substantive); *Betz Lab., Inc. v. Hines*, 647 F.2d 402, 405 (3d Cir. 1981). Accordingly, New York case law governs this issue.

---

[5] Equilease states, "Where the exhibits contradict the allegations of the counterclaim, the exhibits trump the allegations of the counterclaim." This misrepresents *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). Equilease is actually referring to a well-settled rule "that when a written instrument contradicts allegations in the complaint *to which it is attached*, the exhibit trumps the allegations." *Thompson*, 300 F.3d at 754 (emphasis added). In the instant case, Fincastle's allegations are not contradicted by exhibits attached to its counterclaim; rather, the document claimed to contradict Fincastle's allegations is attached to Equilease's complaint. Thus, Equilease misapplied *Thompson* to the instant discussion.

[6] "The parol evidence rule operates to exclude any prior or contemporaneous oral agreements or representations when offered to contradict, vary, add to or subtract from the terms of the agreement which has been reduced to writing." *Yoo v. Piano Post Inc.*, 791 N.Y.S.2d 271 (N.Y. App. Div. 2004).

4

"Generally, the parol evidence rule can be avoided only where there is ambiguity in the written agreement." *Buckthorn, Ltd. v. Rollins Burdick Hunter of New York, Inc.*, 489 N.Y.S.2d 729, 731 (N.Y. App. Div. 1985). Ambiguity means the language is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk-in Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987) (*citing Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F. Supp. 987, 994 (S.D.N.Y. 1968).

The Lease contains a merger clause. Merger clauses "bar any item that would vary or 'add to' the agreement in question." *Pereira v. Cogan*, 267 B.R. 500, 515 (S.D.N.Y. 2001). Merger clauses prevent the introduction of extrinsic evidence by documenting that the agreement is a fully-integrated writing. *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 599-600 (N.Y. 1997). The Lease's merger clause provides: "This Lease constitutes the entire agreement between the parties . . . . No change or modification hereof shall be effective unless in writing and signed by Lessee and an Executive Officer of Lessor."

The oral statements that Fincastle seeks to introduce are barred by the merger clause. The promises were not reduced to writing or signed by either party. Fincastle points to Guild's handwritten note on the Certificate of Acceptance – "Exception to follow regarding good repair and good working order" – to claim that the Lease, or more specifically, the Certificate of Acceptance, is ambiguous. However, the Lease explicitly states that the Lessee accepts the "Equipment 'as is' and with all faults." The modification was handwritten and signed by Fincastle; however, Equilease never agreed in writing to that modification. Thus, the modification is unenforceable. Fincastle has failed to show that Equilease breached the contract; accordingly, the court grants Equilease's motion to dismiss Fincastle's breach of contract counterclaim.

B.

To state a cause of action for fraud in the inducement under New York law, five elements must be shown: (1) "representation of a material existing fact, (2) falsity, (3) scienter, (4) deception, and (5) injury." *Holloway v. King*, 361 F. Supp. 2d 351, 359 (S.D.N.Y. 2005). Fincastle alleges that it was fraudulently induced to enter into the Lease by Equilease's oral assertions that the buses were D.O.T. certified and fully operable when, in fact, they were not.

"It is well-settled New York law that 'a general merger clause is ineffective to exclude parol evidence of fraud in the inducement in an action to rescind the contract.'" *Greenfield v. Shapiro*, 106 F. Supp. 2d 535, 539 (S.D.N.Y. 2000) (*quoting DiFilippo v. Hidden Ponds Assocs.*, 537 N.Y.S.2d 222, 223 (N.Y. App. Div. 1989). However, the parol evidence rule applies when a specific disclaimer included in the contract indicates that the purchaser is not relying upon representations made as to the physical condition of the property. *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993); *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959); *Janian v. Barnes*, 742 N.Y.S.2d 445, 446 (N.Y. App. Div. 2002). Furthermore, for a party's reliance to be justified, that party must consider all of the facts to its knowledge and those facts that could have been learned exercising ordinary prudence. *Danann*, 157 N.E.2d at 603.

5

The Lease expressly states that the "Lessee acknowledges and agrees that it alone selected the Equipment, Maker and Vendor, without any assistance or advice from Lessor and Lessor made no representations or warranty to it, express or implied, as to the Equipment's condition[.]" Fincastle had the opportunity to view and contemplate the terms of the Lease, which it eventually signed without inspecting the buses. Although the buses were in Florida and Fincastle in Illinois, ordinary prudence dictates that Fincastle would send a principal or agent to Florida to inspect the buses. Even after Fincastle discovered the buses' defects, Fincastle took possession of the buses based upon Equilease's oral assurances. Fincastle unwisely relied upon Equilease's representations on two separate occasions despite the Lease's cautionary language. Thus, Fincastle cannot prevail on this counterclaim because the Lease disclaimer specifically bars reliance on Equilease's oral representations. Accordingly, the court grants Equilease's motion to dismiss Fincastle's counterclaim of fraud in the inducement.

C.

Fincastle also asserts that Equilease breached an express warranty by misrepresenting the buses as D.O.T. certified and fully operable. No express warranty can exist where a contract expressly excludes all warranties. *Sayeg v. Gloria Light Co.*, 259 N.Y.S. 492, 492 (N.Y. App. Div. 1932). Fincastle agreed to the Lease, which provides that "Lessor made no representation or warranty . . . , *express* or implied, as to the Equipment's condition, merchantability, fitness or suitability for any particular purpose, design, capacity, quality or characteristics." (Emphasis added.) An express warranty that does not exist cannot be breached. Accordingly, the court grants Equilease's motion to dismiss Fincastle's counterclaim of breach of express warranty.

D.

Fincastle also alleges that Equilease breached the implied warranty of merchantability by misrepresenting the condition of the buses. Fincastle "cannot claim nor be given the benefit of a warranty which it expressly waived." *Broderick Haulage, Inc. v. Mack-International Motor Truck Corp.*, 153 N.Y.S.2d 127, 128 (N.Y. App. Div. 1956). New York case law permits such waivers of implied warranty provisions. *Railroad Waterproofing Corp. v. Memphis Supply, Inc.*, 104 N.E.2d 486, 487 (N.Y. 1952). The Lease clearly states that there is no warranty, express or *implied*. By executing the Lease, Fincastle assented to the waiver of implied warranties and agreed to take possession of the buses "as is" and "with all faults."

Nevertheless, Fincastle might not be without remedy. Although the Uniform Commercial Code allows for limited contractual liability when the contract specifically disclaims express or implied warranties on vehicles transferred 'as is', "this is not now the law in New York State." *Rice v. R.M. Burritt Motors, Inc.*, 477 N.Y.S.2d 278, 280 (N.Y. Civ. Ct. 1984).

The Lease "[is] governed by the laws of the state of New York . . . including all matters of construction, validity and performance, regardless of the location of the [buses]." A consequence of this provision is the "warranty of serviceability," a New York statutory warranty that goes beyond the implied warranties of the UCC and cannot be waived. *Rice*, 477 N.Y.S.2d at 280; *Dato v. Vatland*, 231 N.Y.S.2d 895, 897 (N.Y. Civ. Ct. 1962). This warranty is found in

6

the Vehicle and Traffic Law.[7]  Section  301(c)(1)(a) of the Vehicle and Traffic Law mandates the inspection of brakes, steering, odometer, wheel alignment, lights and any other mechanisms that the commissioner deems appropriate; the dealer must certify the vehicle in compliance with the safety standards established by the commissioner.[8]  N.Y. VEH. & TRAF. § 301.  The buses' defects included, but were not limited to, a dangerously defective brake system on one of the vehicles, a non-functioning engine heater on one bus that precluded the use of the heater in Illinois' cold winter climate, and replacement of numerous parts with inferior parts.  Equilease's failure to transfer vehicles "serviceable" as defined by the statute provides Fincastle with a potential cause of action for breach of implied warranty of serviceability under New York law.  Thus, Equilease's motion to dismiss this count of the counterclaim is denied.

## CONCLUSION

For the foregoing reasons, the court denies as moot Fincastle's Motion to Dismiss or Stay the Proceedings [#55].  The motion for an order of replevin [#26] remains pending, but the court grants Equilease's motion to set a hearing [#47] on the motion.  The matter is scheduled for oral argument by personal appearance before the court sitting in Urbana, Illinois on Wednesday, October 12, 2005 at 10:00 a.m.  The court grants in part and denies in part Equilease's motion to dismiss the counterclaims [#49], dismissing Counts I, II, and III of the counterclaim.  Equilease shall file an answer to Count IV of the counterclaim within fourteen days of the date of this order.

ENTERED THIS 23rd day of September, 2005.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
U.S. DISTRICT JUDGE

---

[7] There is no question that the buses qualify as vehicles under Section 159 of the Vehicle and Traffic Law (including in its definition a device in which a person may be transported on a highway).  Section 415(1)(a) defines a "dealer" as one "engaged in the business of buying, selling or dealing in motor vehicles, motorcycles or trailers, other than mobile homes or manufactured homes, at retail or wholesale . . . ."  N.Y. VEH. & TRAF. § 415(1)(a).  Equilease falls within the definition of "dealer"  because Equilease deals in the business of motor vehicles, specifically buses.  Section 417 provides: "This section shall not apply to a motor vehicle transferred to a lessee, a family member of a lessee, or an employee of a lessee, who had possession of the vehicle for a period of one hundred twenty days or more under a lease."  N.Y. VEH. & TRAF. §417.  The language and purpose of the paragraph strongly suggest that the paragraph is concerned with those instances where an individual purchases the vehicle after he has leased it for a significant period of time, and then complains of vehicle defects about which he should have known.  That is not the situation in the instant case.

[8] Viewing the facts in the light most favorable to the counterclaimant, Equilease could not have truthfully made the necessary certifications.